[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14338
Non-Argument Calendar
_____

D. C. Docket No. 6:10-cv-01861-DAB

NINY J. MOTTA,
on behalf of and as mother and
natural guardian of A.M., a minor,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 24, 2013)

Before DUBINA, Chief Judge, TJOFLAT and MARTIN, Circuit Judges.

DUBINA, Chief Judge:

This case presents a question under the Federal Tort Claims Act ("FTCA").

Appellant, Niny J. Motta ("Motta"), failed to present a medical malpractice claim

on behalf of her son, A.M., to the Department of Health and Human Services

("DHHS") until after the FTCA's two year statute of limitations expired.  The

district court dismissed the case for lack of subject matter jurisdiction.  For the

reasons that follow, we affirm the district court's judgment.

## I.  FACTS

On March 3, 2008, Motta took A.M. to be examined by Dr. Rosario

Martinez-Angel ("Dr. Martinez") at the Central Florida Family Health Center

("CFFHC") because A.M.'s testicle appeared abnormal.  Dr. Martinez incorrectly

diagnosed him with an inguinal hernia.  On March 4, 2008, after A.M.'s condition

continued to deteriorate, Motta took A.M. to the emergency room at Florida

Hospital-East, where he was diagnosed with testicular torsion, and his left testicle

was removed.  Motta alleges that if Dr. Martinez had diagnosed A.M. correctly,

A.M. would not have lost the testicle.

In June 2008, Motta hired counsel to pursue a medical malpractice claim.

Counsel performed a corporate search of CFFHC, and learned it was a non-profit

entity.  He made numerous requests under Florida state law for insurance records

from Dr. Martinez and CFFHC in 2008 and 2009, but each request went

2

unanswered.  Counsel eventually sent a notice of intent to sue to CFFHC and Dr.
Martinez, which they received January 26, 2010.  The notice did not include a
Standard Form 95 ("SF-95") or sum certain.  CFFHC forwarded the notice of
intent to DHHS, which it received sometime before February 25, 2010.

On February 5, 2010, counsel learned for the first time that CFFHC was
federally funded and therefore subject to FTCA because he received a letter from
the Facilities Coordinator at CFFHC acknowledging she had received Motta's
notice of intent to sue and stating "that [CFFHC is] a federally funded health
center, covered under the Federal Tort Claims Act."  [R. 25-1 ¶¶ 22–24.]  The
letter also advised that the notice of intent to sue would be forwarded to "the Office
of General Counsel in Washington, D.C." and that CFFHC would be "requesting a
45 day extension."  [*Id.* ¶ 25.]  The letter did not disclose that DHHS was the
appropriate agency to receive Motta's SF-95.

Counsel prepared to send the SF-95, along with other documentation, to the
"United States Office of General Counsel" because he mistakenly believed there
was only one Office of General Counsel, and therefore, that it was the appropriate
"agency" to receive Motta's SF-95.  Counsel's paralegal conducted an internet
search for an address for "United States Office of General Counsel."  Evidently,
the addressed used was for the Department of Commerce Office of General

3

Counsel.  The SF-95 was mailed there via certified mail on February 23, 2010. Counsel also mailed a copy of the SF-95 and other documentation to the Facilities Coordinator at CFFHC the same day.

On March 1, 2010, Timothy Conner ("Conner"), Senior Litigation Counsel with the Office of General Counsel of the Department of Commerce, received Motta's SF-95.  The next day, Conner faxed a letter to counsel explaining that he received Motta's SF-95 and inquiring as to why counsel had filed an FTCA claim with the Department of Commerce because the agency appeared to have no connection to her medical malpractice claim.

On March 4, 2010, counsel contacted the Facilities Coordinator at CFFHC to attempt to identify the appropriate agency to receive the SF-95, but he was unable to reach her.  On March 9, 2010, counsel's paralegal spoke with Conner about forwarding Motta's SF-95 to the correct federal agency.  Conner told counsel's paralegal that he could not forward the materials without more information.  The same day, counsel's paralegal faxed a letter to the Facilities Coordinator asking for the contact information for the federal agency that governed CFFHC.

The Facilities Coordinator responded on March 10, 2010, and identified

DHHS as the appropriate agency.[1]  Counsel's paralegal contacted Conner the same

day, gave him the appropriate address, and asked him to forward the SF-95 to

DHHS, which he did on March 15, 2010.  DHHS received the materials on March

19, 2010.

Motta filed this lawsuit on December 16, 2010.  On February 10, 2012, the

government filed a motion to dismiss for lack of subject matter jurisdiction

asserting that Motta had failed to timely file her administrative claim within

FTCA's two year statute of limitations.  The district court granted the

government's motion on June 20, 2012.  Motta then timely appealed.

## II.  STANDARD OF REVIEW

We review *de novo* a dismissal for lack of subject matter jurisdiction.

*Broward Gardens Tenants Ass'n v. EPA*, 311 F.3d 1066, 1072 (11th Cir. 2002).

## III.  DISCUSSION

"The FTCA provides a limited waiver of the United States' sovereign

immunity for tort claims."  *Dalrymple v. United States*, 460 F.3d 1318, 1324 (11th

Cir. 2006).  It permits the government to be sued for claims arising from torts

---

[1] Motta also alleges that the Facilities Coordinator told Motta's counsel during this conversation that she had forwarded the SF-95 to DHHS.  The Facilities Coordinator stated in her deposition that she did not remember forwarding it.  At any rate, there is no information in the record as to when the CFFHC-forwarded copy of the SF-95 was sent or when it was received by DHHS; thus, there is no evidence DHHS received an SF-95 before March 4, 2010.

5

committed by federal employees acting within the scope of their employment.  28

U.S.C. §§ 1346(b)(1), 2679(d)(1).  However, "[a] federal court may not exercise

jurisdiction over a suit under the FTCA unless the claimant first files an

administrative claim with the *appropriate* agency."  *Suarez v. United States*, 22

F.3d 1064, 1065 (11th Cir. 1994) (emphasis added).  An appropriate federal

agency is the actual federal agency responsible for handling the claim and not the

government-funded entity or government employee who committed the alleged

tort.  *See Hejl v. United States*, 449 F.2d 124, 125–26 (5th Cir. 1971).[2]

The claimant must also present the claim in writing to the appropriate

agency "within two years after such claim accrues."  28 U.S.C. § 2401(b).[3]  A

claim is deemed presented when the federal agency receives the claimant's SF-95

"or other written notification of [the] incident, accompanied by a claim for money

damages in a sum certain for injury to or loss of property, personal injury, or death

alleged to have occurred by reason of the incident."  28 C.F.R. § 14.2(a).  "When

the sum certain is omitted, the administrative claim fails to meet the statutory

prerequisite to maintaining a suit against the government, and leaves the district

---

[2] The Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[3] Additionally, the lawsuit must be filed within six months after the claimant's receipt of the agency's final decision.  *Phillips v. United States*, 260 F.3d 1316, 1317 (11th Cir. 2001).

6

court without jurisdiction to hear the case." *Suarez*, 22 F.3d at 1065.  If the tort claim is not properly presented within the time period, it "shall be forever barred." 28 U.S.C. § 2401(b).

It is undisputed that the statute of limitations began to run on March 4, 2008, when Motta became aware that Dr. Martinez's misdiagnosis resulted in A.M. losing the testicle.  *See McCullough v. United States*, 607 F.3d 1355, 1359 (11th Cir. 2010) (quoting *Price v. United States*, 775 F.2d 1491, 1494 (11th Cir. 1985)) ("[A] medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both her injury and its connection with some act of the defendant."); *see also Jones v. United States*, 294 F. App'x 476, 480 (11th Cir. 2008) ("[T]he rule [is] that ignorance as to the alleged tortfeasor's *employer* does not toll the statute of limitations.").  Accordingly, the statute of limitations expired March 4, 2010—15 days before DHHS received Motta's SF-95.

Motta has the burden of proving subject matter jurisdiction.  *See OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).  She argues the court has subject matter jurisdiction over the claim for two reasons.  First, she contends her claim should be deemed constructively filed before the March 4, 2010, deadline. Second, she asserts in the alternative that equitable tolling applies.

7

## A. *Constructive Filing*

Motta first argues her claim was constructively filed on one of various dates before the expiration of the statute of limitations. This circuit has never addressed the question whether the doctrine of constructive filing applies to FTCA claims, but even assuming it does, it does not apply to this case.

Our sister circuits that have recognized the doctrine of constructive filing in the FTCA context have only applied it where the inappropriate federal agency: (1) receives a claim that otherwise fully complies with § 14.2(a)'s presentment requirements with sufficient time before the statute of limitations is set to run, and (2) then violates § 14.2(b)(1)'s requirement to forward the claim to the appropriate agency or return the claim to the claimant. Thus, in *Bukala v. United States*, 854 F.2d 201, 202 (7th Cir. 1988), for example, it was apparent on the face of the erroneously-delivered documentation which agency should have received the claim. And the claim was received by the incorrect agency eight months prior to the expiration of the statute of limitations. *Id.* at 204 n.4. The court held the agency's failure to comply with § 14.2(b)(1)'s mandate to transfer erroneously-received claims justified remand to the district court to determine whether constructive filing applied to the claim. *Id.* at 204.

8

Similarly, in *Greene v. United States*, 872 F.2d 236, 236 (8th Cir. 1989), the inappropriate federal agency received the claimant's claim two and a half months prior to the expiration of the statute of limitations, but then adjudicated the claim. The government asserted for the first time before the district court that the claim had been filed with the inappropriate agency, and therefore, the district court lacked jurisdiction. *Id.* The court held that "[b]ecause [the] claim was timely filed, albeit with the wrong agency, and because [that agency] failed to transfer or return the claim," the claim was deemed constructively filed before the statute of limitations expired. *Id.* at 237.

Finally, in *Hart v. Department of Labor ex rel. United States*, 116 F.3d 1338, 1340 (10th Cir. 1997), the claimant incorrectly mailed her deficient claim to the Department of Justice ("DOJ"), which promptly forwarded the documentation to the correct agency—the Department of Labor ("DOL"). The DOJ informed the claimant of the transfer and that her claim was deficient for failure to include a sum certain. *Id.* It also advised that all further documentation should be sent to DOL. *Id.* The day before the statute of limitations expired, the claimant incorrectly mailed sufficient documentation to the United States Attorney General. *Id.* The court held "if [a federal] agency fails promptly to comply with the transfer regulation and, as a result, a timely filed, but misdirected claim does not reach the

9

proper agency within the limitations period, the claim may be considered timely filed." *Id.* at 1341. Thus, the claim was not constructively filed before the deadline because the claimant's "failure to refile in a timely manner with the proper agency cannot be attributed to any dilatory conduct on the part of a federal agency." *Id.*

With this framework in mind, Motta first contends her claim should be deemed filed as of January 26, 2010, the date CFFHC and Dr. Martinez received notice of her intent to sue. But her January 26, 2010, notice of intent did not include the SF-95 or a sum certain, *see* 28 C.F.R. § 14.2(a), and neither CFFHC nor Dr. Martinez constitutes the appropriate federal agency, *see Hejl*, 449 F.2d at 125–26. And even though DHHS did receive her notice of intent by at least February 25, 2010, because that notice did not include the SF-95 or sum certain, she did not fulfill the presentment requirements. *See* § 14.2(a). Thus, we cannot deem her claim constructively filed based on the receipt of the notice of intent to sue.

Motta next argues her claim should be deemed filed as of February 23, 2010, the date her SF-95 was received by CFFHC, because CFFHC is required to forward SF-95s to DHHS "under the FTCA rules." [Appellants' Br. at 15.] Thus, she contends she should not be prevented from bringing suit because of CFFHC's

10

failure to forward the SF-95.    Motta is incorrect in asserting CFFHC was required by either § 14.2(b)(1), or the Federal Tort Claims Act Health Center Policy Manual ("FTCA Manual") to send its courtesy copy of the SF-95 to DHHS.[4]  Section 14.2(b)(1) pertains to federal agencies that erroneously receive an FTCA claim, and the CFFHC is not a federal agency.  Furthermore, the FTCA Manual simply advises that "[i]n the event that a claimant erroneously files a claim or serves premature lawsuit documentation directly with the health center, a covered entity should fax or e-mail a copy of the documentation" to DHHS.  [FTCA Manual, R. 46-1 at 41.]  Here, Motta did not erroneously file the SF-95 with CFFHC.  Instead, she sent a copy to the facility and advised it that she was sending the original SF-95 to (what she thought was) the appropriate agency.[5]  Thus, we conclude that her claim was not constructively filed on February 23, 2010.

Finally, Motta asserts her claim should be deemed filed on March 1, 2010, the date her SF-95 was received by the Department of Commerce.  She essentially argues the Department of Commerce was required to discover—for her—the

---

[4] Motta's argument is apparently partially premised on testimony from a federal employee agreeing that the FTCA Manual requires medical "facilities to provide copies of [SF-]95s that are served upon them" to DHHS.  [R. 69-1 at 17.]  However, she also cites § 14.2(b)(1) in her brief as a basis for finding her claim constructively filed as of February 23, 2010.  [Appellant's Br. at 15–16.]

[5] There is no indication in the record that CFFHC knew at the time it received the copy of the SF-95 that the original SF-95 went to the incorrect agency address.

11

appropriate agency to receive the SF-95, and then send it in time to reach DHHS before the statute of limitations ran, because federal regulations require the form to be forwarded. But federal regulations do not require a federal employee who cannot determine the appropriate agency to receive the SF-95 from the face of the document to discover that information for the claimant. *See* § 14.2(b)(1) ("When a claim is presented to any other Federal agency, that agency shall transfer it forthwith to the appropriate agency, *if the proper agency can be identified from the claim*." (emphasis added)). All that is required is to *either* forward the documentation, when feasible, or return the documentation to the claimant. *Id.* Here, Conner promptly contacted Motta's counsel when he discovered the SF-95 had been sent erroneously to his office, however, he was unable to forward the SF-95 without more information. That the SF-95 was not received by DHHS until after the statute of limitations expired was not due to Conner's failure to follow federal regulations, but instead Motta's failure to timely provide him with the appropriate address.[6] As such, we hold Motta's claim was not constructively filed before March 4, 2010.

---

[6] At any rate, even if federal regulations required Conner to discover the appropriate agency for Motta, Conner only received her claim three days prior to the expiration of the statute of limitations. This eleventh hour filing did not leave Conner sufficient time to execute the transfer, and therefore, constructive filing does not apply. *See Hart*, 116 F.3d at 1341; *Lotrionte v. United States*, 560 F. Supp. 41, 43 (S.D.N.Y.), *aff'd*, 742 F.2d 1436 (2d Cir. 1983) (refusing to

12

## B.  *Equitable Tolling*

In the alternative, Motta argues the statute of limitations should be equitably tolled.  "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence."  *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006) (quoting *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999)).  It is also appropriate if in the exercise of due diligence, the claimant nonetheless files "a defective pleading during the statutory period."  *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 458 (1990).  This circuit has never decided whether equitable tolling applies to claims under the FTCA.  *See Ramos v. U.S. Dep't of Health & Human Servs.*, 429 F. App'x 947, 951 (11th Cir. 2011) (noting that this circuit has never addressed the issue).  And our sister circuits are split on the question.  *See Bazzo v. United States*, 494 F. App'x 545, 546 n.2 (6th Cir. 2012) (describing the split).

However, we need not decide the issue here.  Even if equitable tolling can be applied to FTCA claims, it cannot be applied to this FTCA claim because the untimely filing could have been avoided with due diligence.  It is undisputed that Motta received notice that CFFHC was a federally funded agency covered by

---

find a claim constructively filed when it was received, at best, two days before the statute of limitations ran).

13

FTCA almost a month before the statute of limitations ran on her claim. During that time, she could have discovered the exact agency to receive the SF-95 by calling the FTCA HelpLine, searching a website maintained by DHHS that includes a link to a directory of federally deemed health centers, or, remarkably, simply asking the Facilities Coordinator directly for the exact address before the day the statute of limitations ran.

Motta's counsel did none of these things. Instead, he instructed his paralegal to find an address for the "United States Office of General Counsel in Washington, DC" and send the SF-95 to that address. The paralegal selected an address apparently without noticing that the term applies to multiple federal agencies or that the address was associated with the Department of Commerce. This mistake is perhaps excusable neglect, but equitable tolling does not apply to this form of ordinary negligence. *See Irwin*, 498 U.S. at 96, 111 S. Ct. at 458.

Finally, it is worth noting that it makes no difference that the Facilities Coordinator did not notify Motta that CFFHC was covered by FTCA until she received the notice of intent to sue. *See Ramos*, 429 F. App'x at 952 (holding that a federally funded health center has no obligation to inform a potential claimant of its status until it receives a notice of intent to sue). Here, the Facilities Coordinator notified Motta of CFFHC's status promptly after receiving the notice. This was all

14

that was required unless and until she was asked directly for the appropriate agency to receive the SF-95. Without intentional concealment of the appropriate agency or other circumstances that made obtaining the required information truly out of Motta's control, there can be no equitable tolling of the statute of limitations.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment of dismissal for lack of subject matter jurisdiction.

**AFFIRMED.**